# CHARLESTON

KAHLE *v*. PETERS, MAYOR *et al.*

SCHOEW *v*. SAME.

Submitted September 2, 1908.    Decided October 6, 1908.

1. MUNICIPAL CORPORATIONS—*Councilmen—Qualifications—Validity.*

   The provisions of section 10 of the charter of the City of Bluefield, requiring, among other things, as a qualification of membership in the council, that ''they shall each respectively be the owner of a freehold in said city for at least one year prior to their said election; such ownership to be evidenced by proper deeds of record in the county court clerk's office of Mercer County, West Virginia,'' and that ''before entering upon the duties of their respective offices they shall severally take and subscribe an oath that they possess the above qualifications and are not subject to any of the disqualifications prescribed by this act,'' do not contravene any of the provisions of sections one, four, five and eight Article IV of the Constitution of this State, and are, therefore, constitutional and valid. (pp. 403, 404.)

Separate original applications by James S. Kahle and Karl F. Schoew to compel the mayor and others to restore peti-

tioners to their rights as members-elect of the common council of Bluefield.

*Petitions denied.*

JAS. H. GOLLEHON, WM. E. ROSS, and YORK COLEMAN, for petitioner.

D. E. FRENCH, for respondent.

MILLER, JUDGE:

Section 10 of the charter of the City of Bluefield, among other things, provides: "The mayor, each member of the board of supervisors and each member of the council shall be qualified voters of the city, and each member of the council shall be a qualified voter of the ward from which he is elected. They shall each respectively be inhabitants of said city for at least one year prior to their election, and they shall each respectively be the owner of a free-hold in said city for at least one year prior to their said election; such ownership to be evidenced by proper deeds of record in the county court clerk's office of Mercer County, West Virginia. Before entering upon the duties of their respective offices they shall severally take and subscribe an oath that they possess the above qualifications and are not subject to any of the disqualifications prescribed in this act * * * * ."

The petitioners, Kahle and Schoew, it is conceded, were, at an election held May 5, 1908, duly elected members of the common council of said city, Kahle from the fifth ward and Schoew from the fourth, each to serve for the term of one year from the first day of June following, and were duly declared elected by the common council sitting as a board of canvassers, received from said council certificates of election, took an oath of office, and assumed their seats as members.

Subsequently, upon investigation, it was discovered that the petitioners had not been the owners "of a free-hold in said city for at least one year prior to their said election * * * * evidenced by proper deeds of record" in Mercer county as required by said section, and also that the oaths of office taken and subscribed by them respectively were not in accordance with the requirements thereof. Accordingly, on June 18, 1907, the petitioners having failed and refused to take and subscribe such oath, it was ordered by resolution of

the council that their names "be stricken from the council roll, and that the auditor refrain from calling or recording their votes upon any questions or propositions relative to any business of the council, until they had taken the oath of qualification as prescribed by the charter."

The petitioners, by their respective petitions, seek by original process of *mandamus* from this Court to be restored to their alleged rights as members elect of said common council.

The return of the defendants to the *mandamus nisi* admitting the facts is demurred to by petitioners, and the sole question presented is as to the constitutionality of that provision of said section of the municipal charter requiring such free-hold qualification.

It is claimed by the petitioners that this charter provision contravenes the following provisions of Article IV of the Constitution of this State: (1) "The male citizens of the State shall be entitled to vote at all elections held within the counties in which they respectively reside," etc. (4) "No person, except citizens entitled to vote, shall be elected or appointed to any State, County or Municipal office," etc. (5) "Every person elected or appointed to any office, shall, before proceeding to exercise the authority or discharge the duties thereof, make oath or affirmation that he will support the Constitution of the United States and the Constitution of this State, and that he will faithfully discharge the duties of his said office to the best of his skill and judgment; and no other oath, declaration or test shall be required as a qualification unless herein otherwise provided." (8) "The Legislature, in cases not provided for in this Constitution, shall prescribe, by general laws, the term of office, powers, duties and compensation of all public officers and agents, and the manner in which they shall be elected, appointed and removed."

The proposition which petitioners deduce from these provisions of the Constitution is that section four by negation excludes from the privilege of holding office, state, county or municipal, all persons except those made electors by section one; and as there is nothing in the form of oath prescribed by section five, or in the provisions of section eight, authorizing, in terms or by implication, the imposition of any other or additional qualification, the plainly declared intention of

the Constitution is that all qualified electors shall be eligible to hold office, and that, therefore, the Legislature was without authority to impose the free-hold qualification prescribed by said charter.

Said provision is substantially the same as that of section 1853, Code 1906, (section 13 chapter 47, Code 1899,) relating generally to the incorporation of cities, towns, and villages of less than two thousand inhabitants, except that no particular time of such holding is prescribed. It is conceded that this Court, in *State* v. *McAllister*, 38 W. Va. 485, decided that the free-hold provision of said section 1853 is valid, and unless we overrule it, as we are asked to do, it must control our decision in this case, so far at least as the right of the Legislature to prescribe a free-hold qualification is challenged.

We have re-examined the opinion in that case. Counsel admit that they have practically nothing new to offer in support of their proposition, not already covered by the very able and exhaustive dissenting opinion of Judge Brannon in that case. The whole subject pro and con seems to have been thoroughly considered in that case in the concurring opinions of Judges Dent and Holt and the dissenting opinion of Judge Brannon, and we do not see that we can add to what there has been already said on the subject covered. We are not called upon to say what the Court, as presently constituted, might have decided if the question had been presented to us in the first instance, but as the provision in question has long been contained in the general law of said section 1853, and similar provisions have been carried into the special charters of many other municipalities before and since the Constitution was so interpreted as not inhibiting it, and have been acted on as valid and binding provisions, well recognized rules of practice preclude us from disturbing that decision except for very cogent reasons, and unless satisfied that it was clearly and palpably wrong. Very respectable authority, it is true, has held that the rule of *stare decisis* has no application to questions of construction of organic laws or the constitutionality of statutes. *Burks* v. *Hinton*, 77 Va. 1; but certainly such a doctrine, if sound, should not detract from a proper adherence to the rule of practice just alluded to. After a question has been as thoroughly considered and

decided as the one disposed of in *State* v. *McAllister, supra,* some stability should be attached to it, and it should not be overthrown for slight reasons.

But it is said that the petitioners were free-holders at the time of their election, as is admitted, and qualified to fill the office of councilman under said section 1853 of the general law, and conceding the validity of the provision requiring the property qualification, that the time limit of one year prescribed by said charter; a question not involved or decided in *State* v. *McAllister,* is unreasonable, unconstitutional and void. We cannot accede to this proposition. The only proper justification for such property qualification is that it will secure better and more competent public officers, and in whose hands the people may more securely entrust the public business. Being themselves free-holders, possessed of a portion of the very land on which a city is built, and thereby directly interested in and subjected to a share of all the burdens of taxation, it is but reasonable to suppose that better and safer municipal officers will be found among that class of electors than among those not so qualified; and if such a requirement is justified in the interest of the public good, and freed from constitutional objection, then it follows that any reasonable concomitant requirement as to the time of such holding that will better accomplish the object ought to have equal justification. Such a requirement tends to prevent all temporary shifts of property and doubtful expedients that might be resorted to by persons otherwise disqualified to hold office. We think this additional qualification within the reason of the law of *State* v. *McAllister,* and controlled by the same principles.

We are, therefore, of the opinion to deny to the petitioners the aid of the peremptory writ.

*Petitions Denied.*

BRANNON, JUDGE:

I wish to say that I still hold the opinion expressed in my dissent in *State* v. *McAllister;* but I do not dissent in this case, but concur, in deference to that case. I have no desire to reopen the question.

McWHORTER, JUDGE, (*dissenting*):

I cannot concur in the opinion in this case because I have no doubt in my mind of the unconstitutionality of the statute requiring a qualification for holding office in addition to that required by the Constitution, as is well shown in the dissenting opinion of JUDGE BRANNON in the case referred to of *State* v. *McAllister*, 38 W. Va. 485. I do not see that I could add anything to the, to me, unanswerable argument contained in said dissenting opinion. The doctrine of *stare decisis* has no application when the constitutionality of a statute is involved. It may be said this Court is bound by its own decisions, and this is true where there is no higher obligation resting upon the Court, but we must not forget that the Constitution itself is higher authority than any decision of this Court. As stated in the opinion, "After a question has been as thoroughly considered and decided as the one disposed of in *State* v. *McAllister*, *supra*, some stability should be attached to it, and it should not be overthrown for slight reasons." I fully agree with this proposition, but if to my mind the decision was clearly and unquestionably in conflict with the provisions of the Constitution it is my duty to do all I can to "overthrow" or overrule it, although others do not view it in the same light. The reason for "overthrowing it" is not slight but of the most serious character. I ascribe to all my colleagues the same conscientious desire to reach true conclusions as I take to myself. The only difference is we do not see alike. In *Ward* v. *County Court*, 51 W. Va. 102, I could not agree with the opinion and wrote a note, which is found at page 106, wherein I stated that I did not desire to dissent from the majority of the Court and could not concur but simply *acquiesced* in the opinion because of the former "holdings of this Court in sustaining the constitutionality of acts of the legislature taking from the county court the superintendence and administration of the police affairs of their counties and committing the same to the municipal authorities of cities, towns and villages, insofar as relates to the granting of license therein for the sale of intoxicating liquors." I have never been satisfied with that "acquiescence." Not having the shadow of a doubt of the unconstitutionality of those acts, my action should have been a possitive dissent as it is in this case for the same reason—and this with all due respect to the opinion of my brethren.