# CHARLESTON.

## McMILLIN v. NEELEY, *Mayor.*

Submitted June 10, 1909.　Decided December 14, 1909.

1.　MUNICIPAL CORPORATIONS—*Qualification of Councilmen.*
    The provision of the charter act of the City of Fairmont passed in 1899, demanding freehold qualification for a councilman is constitutional. (p. 497).

2.　SAME—*Council—Majority Required for Business.*
    That provision of the charter act of the City of Fairmont passed in 1899, that "the majority of the whole number of officers mentioned in the 3d. section of this act shall be necessary to the transaction of any business whatever", is intended only to demand such majority for a quorum, for business, and does not require a majority of the whole number for ordinary business, if such quorum be present. (p. 497).

Application by C. E. McMillin for writ of *mandamus* against Mansfield M. Neely, Mayor, and others.

*Writ refused.　Alternative writ dismissed.*

*H. N. Ogden* and *Tusca Morris,* for petitioner.

*Charles Powell,* for respondents *Thomas V. Buckley* and others　*James A. Meredith* and *John Henshaw,* for respondents M. M. Neely, Mayor, and others.

BRANNON, JUDGE:

O. E. McMillin was elected, 21st March, 1908, as councilman of the city of Fairmont, and was duly declared elected, took the oath of office, was admitted as a member by the city council, acted as such for months. Later, a citizen filed with the council a petition alleging that McMillin was incompetent to hold the office because of not being a free-holder at the time of his election. The council tried the matter and by a vote of five to four declared the office of councilman held by McMillin as vacant, acting under section fifteen of the city charter providing that if any person elected as councilman should be ineligible, the council for the time being could declare his office vacant. The charter act provides that, "No person shall be eli-

66 W. Va.

gible to the office of mayor, city clerk or councilman unless he is a freeholder". McMillin asks a *mandamus* to compel his admission as councilman.

The council under the charter consisted of the mayor and ten councilmen, the mayor having a vote only in case of tie. The charter contains this provision that, "The majority of the whole number of officers mentioned in the third section of this act shall be necessary to the transaction of any business whatever". The officers here mentioned are the mayor and the councilmen, the mayor and ten councilmen. The vote by which McMillin's office as councilman was declared vacant, operating to remove him from office, was five for and four against such declaration.

It is contended that a majority of the whole number of the council not having voted to declare the place vacant, the order of the council is void; but in this we cannot concur. The provision that a majority of the members shall be required to transact business does not mean that such majority must vote in favor on each and every act or action, great or small. Such a construction would be unusual, inconvenient and detrimental to public interest. It means only to require a majority for a quorum. *Wood* v. *Gordon,* 58 W. Va. 321, does not support the plaintiff on this point. The charter in that case, as to the specific act of filling a vacancy in the council, provided that "the council shall by a majority vote of all members elected, fill the vacancy". Different from our case.

Plaintiff's counsel brings up for reconsideration the provision in the charter act of the legislature that councilmen must be freeholders, claiming that it is unconstitutional. My own opinion is that it is, as I insisted in *State* v. *McAllister,* 38 W. Va. p. 497; but this Court has again held such provision valid. *Kahle* v. *Peters,* 64 W. Va. 400.

McMillin when elected and when inducted into office was not a freeholder. This charter says that "no person shall be eligible" to the office of councilman "unless a freeholder". In the *McAlister Case* I thought that under such a provision it would suffice if the person be a freeholder at the beginning of his term; but that decision shut him out if not qualified at his election. But McMillin was not a freeholder at the commencement of his term. Two days before the election Traugh

conveyed to McMillin real estate; but by deed of that same
date McMillin conveyed it back to Traugh, and delivered the
deed to Traugh with the understanding that as McMillin in-
tended to acquire from Nuzum real estate in future Traugh
was to hold the deed and not record it until McMillin should
get a deed from Nuzum. In other words, Traugh was to hold
the land in such trust. Such trust was void and the deed
vested absolute estate in Traugh, if it had ever been out of him.
If a party conveys land to another voluntarily he cannot set
up a parol trust in his *own favor*, as that would deny the deed
and violate the statute of frauds. *Poling* v. *Williams*, 55 W.
Va. 69. And even if we say that the deed to Traugh was not
effective to revest him with title, because of want of delivery,
it was later recorded and McMillin lost his estate and became
ineligible. This latter consideration alone, this after occurring
disability, under some authorities would seem to forbid a *man-
damus* to restore him, even after he obtained a deed from
Nuzum. Opinion in *Bunting* v. *Willis*, 27 Grat. at p. 160;
*Chew* v. *Justices*, 2 Va. Cases 208; *Avery* v. *Justices, Id.* 523;
*Polsen* v. *Justices*, 2 Leigh 743; *Shell* v. *Cousins*, 77 Va. 328;
*Commonwealth* v. *Sherrar*, 4 Leigh 643; Mechem on Public
Offices, section 420. But it is not necessary to decide this as
he was never legally qualified and in office.

The plaintiff seeks to relieve himself from the requirement
of a freehold qualification by saying that at one time chapter
47 of the Code required a freehold qualification, but that it was
dispensed with by an amendment of chapter 47, section 13,
enacted by chapter 92 Acts 1897, and that the council of Fair-
mont in 1905 adopted chapter 47 as a part of its charter as
allowed by section 1 of chapter 47, and that the freehold
qualification having been dispensed with, therefore the provision
of the charter demanding it has no effect. In the first place,
the adoption by the council of chapter 47 only has the operation
to give the city or town "powers" given by chapter 47, and to pro-
vide that the city or town may elect officers as provided by
chapter 47. The ordinance of adoption professes to go no fur-
ther, and could not. This does not fix *qualifications* of officers.
Another answer is that after the act amending section 13, chap-
ter 47, Code, and after the adoption by the council of that chap-

ter, the Legislature passed chapter 10, Acts of 1899, amending the charter of Fairmont, and by that act required that councilmen should be freeholders. Even if the adoption by the council of chapter 47 had for a time dispensed with the qualification of freehold (but it did not) the later act would require it.

As to the contention that the council had no power to declare the vacancy, we need only say that the act of the Legislature chartering Fairmont authorized it, and that *Richards* v. *Clarksburg,* 30 W. Va. 491, asserts the common law power of municipal corporations to remove officers.

For these reasons we dismiss the writ of alternative *mandamus* heretofore awarded.

*Writ refused. Alternative writ dismissed.*