400 S.E.2d 572

**Ergie SMITH, Jr.**

v.

**The COUNTY COMMISSION OF McDO-WELL COUNTY, Sitting as a Board of Canvassers; Roy Jack (Johnny) Allen; Sid Bell; and the McDowell County Board of Education.**

**No. 19740.**

Supreme Court of Appeals of West Virginia.

Dec. 13, 1990.

Lee H. Adler, Beckley, for Ergie Smith, Sr.

Sarah Hall, Pros. Atty., Welch, for County Com'n.

Kathryn Reed Bayliss, Princeton, for Roy Jack (Johnny) Allen.

---

WORKMAN, Justice:

This case is before the Court upon a petition for writ of mandamus and/or prohibition [1] in which petitioner Ergie Smith, Jr., is seeking an order prohibiting respondent Roy Jack Allen from continuing to sit as a member of the respondent McDowell County Board of Education (hereinafter referred to as BOE) and to direct the respondent McDowell County Board of Canvassers (hereinafter referred to as BOC) to reinstate petitioner to his lawfully elected seat on the BOE. The petitioner argues that: 1) Rule 14 of the Rules of Appellate Procedure seeking relief in mandamus is appropriate in a case such as this; 2) although Article XII, Section 6 of the West Virginia Constitution provides that "[n]o more than two of the members of ... [a school] board may be residents of the same magisterial district ...," the provision does not permit the BOC to remove the duly and lawfully elected candidate, petitioner Smith, where respondent, Sid Bell, an incumbent member of the BOE not running for reelection, moved after the close of the filing period for the BOE election, from the magisterial district from which he was elected to the magisterial district in which petitioner Smith resided; and 3) any action or orders promulgated by the BOC below were invalid because one of the voting members of the BOC and two of the actual participants had a fatal conflict of interest.[2]

There were two vacancies to be filled on the BOE in the May 8, 1990, primary election. After the election, the BOC certified that the two candidates receiving the most votes for the BOE were Linda K. Douglas (Browns Creek District) and Ergie Smith, Jr., (Browns Creek District). On May 25, 1990, Roy Jack (Johnny) Allen (Big Allen Creek District), the candidate who received the third highest number of votes, filed a notice of election contest with the McDowell County Commission (hereinafter referred to as the Commission) and served a copy of that notice upon petitioner Smith pursuant to W. Va. Code § 3–7–6 (1963). Respondent Allen's election contest was based on the assertion that Smith was ineligible and disqualified from the elected position as a BOE member because at the time of the election, two other BOE members were residents of the Browns Creek District, thereby disqualifying Smith as a matter of law.[3]

The issue at hand centers around incumbent BOE member Sidney Bell's change of residency from the North Elkin District to the Browns Creek District prior to the May 8, 1990, BOE election. On June 26, 1990, the commission conducted a hearing upon the contest.

Bell's testimony indicated that he was elected in 1988 to the BOE as a resident from North Elkin District. On March 22, 1990, Bell purchased a home in the Browns Creek District and began moving to that location, although he did not sell his home in the North Elkin District until April 16, 1990. Bell further testified that he completed his change of residency to Browns Creek District prior to the May 8, 1990, election. At the time of Bell's move, the BOE had only one other member who resided in Browns Creek District, Linda K. Douglas, who was also a candidate for reelection to the BOE.

Bell's testimony further revealed that he did not change his voter's registration prior

---

1. It is important to note that this matter was never resolved in the Circuit Court of McDowell County. Apparently there was an agreement below between the petitioner, the Board of Canvassers, and Judge John Frazier to bring the matter before this Court in order to expedite it. Consequently, no action, other than a status conference, has been taken nor have any orders been entered by the lower court.

2. Upon review of the record in this matter, we find that there is no merit to this particular assignment of error, especially since the appellant failed to raise this issue before the BOC.

3. At the time of the election the BOE consisted of Linda Douglas, who represented Browns Creek District and was running for reelection from the district; Sid Bell, an incumbent not running for reelection who was originally elected from North Elkin District, but moved to the Browns Creek District on April 16, 1990; another member from the North Elkin District and two members from other districts not identified in the record.

to April 9, 1990, the date the books closed, and consequently he voted in the North Elkin District. Additionally, on April 25, 1990, Bell gave a letter to the BOE's superintendent advising him that he had changed his residence effective April 19, 1990, and this residency change notice was included in the April 25, 1990, minutes of the BOE meeting. Bell failed to officially change his address until May 18, 1990, which was the date reflected in his "Affidavit of Change of Residency." On June 27, 1990, the commission determined that Sidney Bell and Linda K. Douglas be declared occupants of the seats on the BOE from Browns Creek District and that respondent Allen be declared the occupant of the remaining vacant seat due to the disqualification of Ergie Smith.

The main issue before this Court is whether an incumbent member of the board of education elected from one magisterial district can move his residence to a second magisterial district and retain his seat to the exclusion of a person who is elected from the second magisterial district for a vacancy on the board, when only one of the two may be seated due to the proscription found in Article XII, Section 6 of the West Virginia Constitution.[4] Specifically, the petitioner contends that he was rightfully elected to his seat on the BOE and was improperly precluded from taking his seat because respondent Bell was never elected from Browns Creek, but was elected from North Elkin District and voluntarily abandoned that district when he moved out of the district shortly before the election. The respondents contend that the commission acted properly since petitioner Smith could not be duly and lawfully elected to a seat upon the BOE when, at the time of the election and thereafter, two members of the BOE were already residents of Smith's district of residence.

Obviously, the problem confronting the BOC was that at the time of the election, Linda K. Douglas, Ergie Smith, Jr. and Sidney Bell were all arguably residents of the Browns Creek District. Based on this information the BOC, in its attempt to comply with the state constitution, allowed Bell's change of residency from North Elkin to Browns Creek magisterial district, and ousted Smith from the Browns Creek seat.

■ We have previously found that a fundamental right to become a candidate for office exists in our state. *See* Syl. Pt. 1, *Sturm v. Henderson,* 176 W.Va. 319, 342 S.E.2d 287 (1986); *State ex rel. Piccirillo v. City of Follansbee,* 160 W.Va. 329, 233 S.E.2d 419 (1977). Further, it is undisputed that the petitioner complied with all the statutory provisions in filing as a candidate for the BOE. One of those statutory requirements involved the filing of a certificate declaring candidacy with the clerk of the circuit court "not earlier than the second Monday in January next preceding the primary election day, and not later than the first Saturday of February next preceding the primary election day ..." W.Va.Code § 3–5–5 (1985). Quite clearly, when the petitioner fulfilled this requirement he was acting on the belief that there was an available seat in the Browns Creek District and as W. Va.Code § 3–5–6 (1985) indicates, he was identified on his certificate of candidacy and later on the ballot as seeking the office from the magisterial district in which he resided.

■ Therefore, at the time of the petitioner's filing for a seat on the BOE, he was in compliance with the West Virginia Constitution and the relevant statutory provisions. It is apparent then that under respondent Bell's contention, his change of residency after the filing date effectively deprived the petitioner of his constitutional right to run for a BOE seat from his district which was *open* at the time of the filing deadline.

---

**4.** Article XII, Section 6 of the West Virginia Constitution provides that:

> The school districts into which the state is now divided shall continue until changed pursuant to act of the Legislature: Provided, That the school board of any district shall be elected by the voters of the respective district without reference to political party affiliation. *No more than two of the members of such board may be residents of the same magisterial district within any school district.* (emphasis added)

Thus, in order to prevent such an abrogation of an individual's right to run for a vacant seat on a county board of education, an incumbent member of the county board of education elected from one magisterial district cannot change his residence [5] on the filing deadline or thereafter to a second magisterial district and retain his seat on the board to the exclusion of a person who has already filed to run for a vacant seat [6] in the second magisterial district and is elected.

In the present case, we find that the commission erred in declaring that respondent Bell was the rightful occupant on the BOE from Browns Creek District thus disqualifying petitioner Smith from that seat. Finding that all the requirements for a writ of mandamus have been met pursuant to the guidelines set forth in *State ex rel. Booth v. Board of Ballot Comm'rs*, 156 W. Va. 657, 196 S.E.2d 299 (1972) we hereby grant a writ mandating that the BOC reinstate petitioner to his duly elected position on the BOE, thereby removing respondent Bell from that seat.

Writ granted as moulded.

5. It is unnecessary to resolve the larger question of whether an elected board of education member can change his residency at all once he is elected from a particular magisterial district and still retain his seat, since the facts before this Court do not present us with that issue.

6. Obviously if an elected board member changes his residency to a magisterial district where no vacant seats exist, he automatically vacates his seat on the board.