408 S.E.2d 60

Richard L. "Dickie" ADKINS, Appellant Below, Appellee,

v.

Billy Joe SMITH, Appellee Below, Appellant.

No. 20074.

Supreme Court of Appeals of West Virginia.

Submitted May 7, 1991.

Decided July 17, 1991.

---

Gretchen O. Lewis, Williamson, for appellee.

Charles H. Damron, Leon, James M. Casey, Pt. Pleasant, for appellant.

WORKMAN, Justice:

This is an appeal by Billy Joe Smith from a final order of the Circuit Court of Lincoln County dated January 23, 1991. The appellant contends that the lower court erred by reversing a decision of the Lincoln County Board of Canvassers (hereinafter referred to as Board of Canvassers) and declaring that the appellee was entitled to a seat on the Lincoln County Board of Education (hereinafter referred to as Board of Education). We agree with the contentions of the appellant and reverse the decision of the Circuit Court of Lincoln County.

The appellant was a candidate for election to the Lincoln County Board of Education at the May 8, 1990, primary election. Two open full-term seats and a brief unexpired term were available. Among the candidates running for this position, the individuals receiving the highest number of votes, respectively, included Dr. Charles Vance, residing in Laurel Hill District, the appellee Richard "Dickie" Adkins, residing in Laurel Hill District, and the appellant Billy Joe Smith, residing in Duval District. One incumbent Board member, George Chapman, also resided in Laurel Hill District. Pursuant to W.Va.Code § 3-5-6 (1990),

no more than two ... members [of a local board of education] shall be elected from the same magisterial district, and then only when such magisterial district does not have a holdover member of said board, and if such magisterial district has one holdover member on said board only one member shall be elected as aforesaid; and if more persons from a magisterial district receive the highest number of votes in said election, then of such persons only the person or persons having the highest vote who do not make the aggregate number of elected members and holdover members more than two from such magisterial district shall be declared elected, and the remaining members shall be declared from the highest from other magisterial districts; and in no event shall any member be declared elected from the same magisterial district wherein reside two already elected or otherwise qualified members of such board who will continue to hold office after the beginning of the term for which such election was held.

In *Sturm v. Henderson,* 176 W.Va. 319, 342 S.E.2d 287 (1986), the constitutionality of the W.Va.Code § 3-5-6 requirement that no more than two members of a county board of education "shall be elected from the same magisterial district" was challenged. We held that those limiting provisions of W.Va.Code § 3-5-6 and § 18-5-1, also limiting the consistency of the board to two members from the same magisterial district, were in conflict with W.Va. Const., art. IV, §§ 4 and 8 concerning the qualifications of candidates for certain public offices. *Sturm,* 176 W.Va. at 323, 342 S.E.2d at 292 and Syl. Pt. 2. In apparent response to *Sturm,* an amendment to W.Va. Const. art. XII, § 6 was proposed by House Joint Resolution No. 6, Second Extraordinary Session of 1986, and ratified on November 4, 1986. Prior to the amendment, Section 6 had provided as follows: "The school districts into which any county is now divided shall continue until changed in pursuance of law." Subsequent to that amendment, the full text of the West Virginia Constitution, art. XII, § 6 provides as follows:

The school districts into which the state is now divided shall continue until changed pursuant to act of the Legislature: Provided, That the school board of any district shall be elected by the voters of the respective district without reference to political party affiliation. No more than two of the members of such board may be residents of the same magisterial district within any school district.

Based upon the provisions of W.Va.Code § 3-5-6 and Article XII, Section 6 of the

West Virginia Constitution and due to Mr. Chapman's incumbent position from Laurel Hill District, only one of the candidates residing in Laurel Hill District could be elected as a member of the board of education in May 1990.

The election was held on May 8, 1990, and the certification of the election was held on May 29, 1990. Between those two dates, on or about May 19, 1990, the appellee moved his residence to Sheridan District. In certifying winners of the election, the Board of Canvassers recognized Laurel Hill District as the appellee's residency and concluded that Dr. Vance, Laurel Hill District, and the appellant, Duval District, were entitled to seats on the Board of Education. The Board of Canvassers determined that the appellee was not entitled to a seat on the Board of Education due to his residency in Laurel Hill District at the time of the election.

The appellee contested the decision of the Board of Canvassers, and facts were stipulated at a hearing held on June 21, 1990. The appellee had been awarded the unexpired term consisting of approximately three weeks in June 1990. The Board of Canvassers reasoned that the appellee was entitled to that unexpired term as the second highest vote-getter, but could only serve until the beginning of the full term when Dr. Vance, receiving the highest number of votes, would join the incumbent Mr. Chapman as the two members from Laurel Hill District.[1]

The appellee appealed the decision of the Board of Canvassers to the Lincoln County Circuit Court. Argument was held on December 7, 1990, before the Honorable W. Jack Stevens based upon the facts as stipulated by the parties. The lower court reversed the Board of Canvassers and de-clared the appellee the winner of the seat on the Board of Education, by order dated January 23, 1991. The lower court reasoned that the appellee had received a greater number of votes than the appellant and that the electorate's will was the "American way of conducting elections." We granted a stay of that order and subsequently granted this appeal.

■ In *Smith v. County Comm'n*, 184 W.Va. 328, 400 S.E.2d 572 (1990), we encountered a situation wherein an incumbent member of the McDowell County Board of Education had changed his residence after the close of the filing period for the Board of Education election. *Smith*, 184 W.Va. at 329, 400 S.E.2d at 573. Due to the incumbent's move into Browns Creek District, a candidate from Browns Creek District who had filed his candidacy prior to the incumbent's change of residence was disqualified. *Id.* 184 W.Va. at 330, 400 S.E.2d at 574. While the factual scenario in the present case differs substantially, *Smith* is instructive regarding the manner in which changes of residency after the filing deadline shall be viewed. In the syllabus point of *Smith*, we held the following:

> An incumbent member of the board of education elected from one magisterial district cannot change his residence on the filing deadline or thereafter to a second magisterial district and retain his seat on the board to the exclusion of a person who has already filed to run for a vacant seat in the second magisterial district and is elected.

*Id.* 184 W.Va. at 328, 400 S.E.2d at 572. While our decision in *Smith* was based, in part, upon the fundamental right to become a candidate for office, we also attached great emphasis to the filing deadline as the relevant date upon which residency qualifi-

---

1. Two full-term four-year seats beginning July 1, 1990, and ending June 30, 1994, were available. A short unexpired term, from the certification of the election on May 29, 1990, to June 30, 1991, was also available. Dr. Vance, from Laurel Hill District, had served by appointment to a previous unexpired term to terminate at the certification of the election on May 29, 1990. Consequently, from the end of Dr. Vance's previous appointment to the beginning of Dr. Vance's four-year term, the short unexpired term was created. It was to this term that the appellee was appointed. Thus, Dr. Vance was actually serving on the Board from Laurel Hill District until the certification of the election and again at the beginning of the July 1, 1990, term. The only time period during which only one incumbent would be serving from Laurel Hill District was the unexpired term which was given to the appellee. We approve of that reasoning and address only the appointment to the full four-year term.

cations are established for the approaching election. *Id.* 184 W.Va. at 329, 400 S.E.2d at 572–73.

■ In the present case, we find that the lower court erred in declaring that the appellee was the rightful occupant of the Board of Education position. The appellee filed his candidacy for a seat on the Board of Education in Laurel Hill District, he was placed on the ballot from Laurel Hill District, he campaigned from Laurel Hill District, and he was twice published on a sample newspaper ballot from Laurel Hill District.[2] The appellee was also a resident of Laurel Hill District on the day of the election. Between the actual election and the certification thereof, the appellee changed his residency to Sheridan District and therefore contends that he is entitled to a seat on the Board of Education to which he would quite clearly not have been entitled had he remained in Laurel Hill District.

The appellee relies extensively upon the contention that an election is not final until its certification. *Green v. Jones,* 144 W.Va. 276, 289, 108 S.E.2d 1, 9 (1959). While such assertion is technically correct, we are not dealing in the present case with a situation in which the issue is the finality of an election. The issue confronting this Court is the propriety of permitting an individual to file, campaign, and become elected from one district and then maintain a seat on the County Board of Education identified as a member from another district. Thus, the question is not when the election becomes final, but rather when the residency qualification of the candidate is to be ascertained.

We find the appellee's reliance upon *Green* as support for his position unfounded. In *Green,* two incumbents not up for reelection resided in Lewis District at the time of the filing deadline and election for the Board of Education. Of the candidates seeking the two open seats, Mr. Jones, Lewis District, received 1,981 votes, and Mr. Green, Hannan District, received 1,468 votes. 144 W.Va. at 279, 108 S.E.2d at 2–3. Due to the residency requirements, Mr. Jones, filing in Lewis District, would not have been eligible for a seat on a Board which already included two Lewis District incumbents. *Id.* 144 W.Va. at 282, 108 S.E.2d at 5. However, prior to the declaration of the results of the election and thus prior to any candidate's actual placement on the Board of Education, one of the incumbent Lewis District members resigned. *Id.* While a substantial portion of our opinion addressed the validity of the Board's acceptance of that incumbent's resignation, we concluded that Mr. Jones could be granted a position on the Board due to the incumbent's resignation. *Id.* 144 W.Va at 290–291, 108 S.E.2d at 10.

■ We overrule *Green* to the extent that it permits a candidate residing in District X to file for a position on a county board of education while two or more incumbents who are to remain on the board are also residents of District X. In addressing general issues of qualifications of candidates, we have consistently held that where a statute specifies eligibility requirements, a candidate must possess the requisite qualifications for the office he seeks at the time of his nomination. *See e.g., State ex rel. Brewer v. Wilson,* 151 W.Va. 113, 150 S.E.2d 592 (1966), *overruled in part on other grounds in Marra v. Zink,* 163 W.Va. 400, 256 S.E.2d 581 (1979).[3]

---

**2.** The record is silent as to the precise language employed by the sample newspaper ballot in presenting the appellee's name as a candidate or whether the magisterial district of residency was indicated. W.Va.Code § 3–5–5 (1990), however, requires that an individual desiring to declare himself a candidate for election to the county board of education must be "eligible to hold office as a member of a county board of education...." He must also file a certificate with the clerk of the circuit court of the county stating that he is a candidate, that he desires his name printed on the ballot, that he is a legally qualified voter, that he is eligible to hold office, and that he is a candidate in good faith. *See id.*

Further, he must state the address of his residence. *Id.* Similarly, W.Va.Code § 3–5–6 provides that each candidate in an election seeking membership on a county board of education "shall be identified as to the magisterial district from which he is a resident."

**3.** We do, however, recognize those cases involving other political entities in which individuals have been permitted to run for an office for which they will not be qualified until they are to take that position. For example, in syllabus point 2 of *State ex rel. Dostert v. Riggleman,* 155 W.Va. 808, 187 S.E.2d 591 (1972), we held that a candidate for the office of prosecuting attorney

In syllabus point 2 of *Brewer*, 151 W.Va. at 113, 150 S.E.2d at 593, for instance, we recognized the following:

> The power of the legislature to regulate the nomination and election of candidates for public office and to prescribe essential qualifications to be possessed by candidates in order to be eligible to be nominated or elected is plenary within constitutional limitations.

Furthermore, in syllabus point 3 of *Brewer* we noted:

> The language of the pertinent statute or constitutional provision relating to essential qualifications of candidates for a public office must be regarded by a court as controlling in determining at what time an essential qualification must exist.

*Id.*

We adopt these same principles as applicable to an election for a county board of education. An individual is not to be deemed eligible to hold office as a member of a county board of education if he does not meet the residency requirements at the time he files his candidacy. Moreover, it is impossible for an individual to meet the residency requirements if he resides in a magisterial district in which two or more members to remain on the board also reside.[4]

Furthermore, we do not interpret W.Va. Code § 3–5–6 or Article XII, Section 6 of the West Virginia Constitution to permit a candidate to file, run for office, and become elected from a particular magisterial district and subsequently attempt to cure any residency problem he may encounter by changing the district of his residency. As we intimated in *Smith*, we do not approve of such thinly veiled attempts to subvert the obvious intent of the restrictions on members from the same magisterial district. 184 W.Va. 328, 400 S.E.2d 572. An individual's residency, for purposes of ascertaining his qualification to hold membership on a local board of education, shall be determined on the basis of the magisterial district in which the individual resides when he files his candidacy for election to such position.

In the present case, an incumbent member of the Board of Education, Mr. Chapman, was from Laurel Hill District. Consequently, only one additional seat was avail-

---

can be nominated for that office despite the fact that he is not yet a duly licensed attorney if he can remove his ineligibility before the next general election or the commencement of the next term of that office. In so holding, however, we recognized that where the constitution or statute specifies that qualifications of a candidate must exist at the time of the election, a candidate who does not possess such qualifications is not eligible even though disqualifications may cease to exist prior to the beginning of that term. *Id.* 155 W.Va. at 812, 187 S.E.2d at 593. Furthermore, we found that there was no provision in the West Virginia Constitution or any statute prescribing qualifications for eligibility for the office of prosecuting attorney. *Id.* Consequently, we permitted the individual seeking that position to remove his ineligibility before the next election or commencement of the next term of office. *Id.* 155 W.Va. at 816, 187 S.E.2d at 595. However, if there had been a constitutional or statutory provision relating to qualifications necessary for office, as in the present case, such provision would have been given controlling effect. *Id.* 155 W.Va. at 812, 187 S.E.2d at 593.

Similarly, W.Va. Const., art. IV, section 4 provides that certain age requirements must be satisfied by the beginning of terms of office rather than at any previous time. In the present case, our holding regarding residency qualifications of members of county boards of education is narrowly construed to provide a method of determining the requisite residency qualifications for that specific group of candidates seeking positions on county boards of education.

4. The present case differs from *Green* to the extent that two incumbents to remain on the board in *Green* resided in the same district when Mr. Jones declared his candidacy from that same district. Consequently, but for the resignation of one of those incumbents, a third seat for a resident of that same district would not have been available.

Conversely, in the present case, only one incumbent to remain on the board was already seated from Laurel Hill District, and the appellee was technically eligible for the second seat as a resident of Laurel Hill District at the time he declared his candidacy. Dr. Vance, however, received more votes than the appellee and earned that one remaining Laurel Hill District seat. The issue then became whether the appellee could change his district of residency to Sheridan District after having run from Laurel Hill District, thereby thwarting the limitation on Laurel Hill District members.

Despite the variation in factual scenarios between *Green* and the present case, we believe it necessary to overrule *Green* in an attempt to provide a uniform approach to the resolution of such county board of education qualification issues.

able to be filled from Laurel Hill District. The appellee filed as a resident of Laurel Hill District, and Dr. Vance, a candidate receiving a higher number of votes, also filed as a resident of Laurel Hill District. Thus, when Dr. Vance received a higher number of votes than the appellee, Dr. Vance became entitled to that one available Laurel Hill seat, and any other available seats were to be filled by individuals from districts other than Laurel Hill. The appellant, filing from Duval District and receiving the next highest number of votes after Dr. Vance and Mr. Adkins, was the proper candidate to be certified as a full-term member of the Board of Education.

The decision of the Circuit Court of Lincoln County is therefore reversed, and the decision of the Board of Canvassers, holding that the appellant is entitled to the full-term position in question, is hereby reinstated.

Reversed.